## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REYNOLDS INNOVATIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Civil Action No. 1:13-cv-286 |
| JOHN THOMPSON, individually and | ) | |
| d/b/a "PREFERREDVAPOR.COM," | ) | |
| "PREFERRED VAPOR," | ) | |
| "PREFERRED VAPOR ECIGS," and | ) | |
| "ELECTRIC CIG REVIEWS," | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, Reynolds Innovations Inc. ("RII") states the following for its Complaint against Defendant John Thompson, individually and d/b/a "PREFERREDVAPOR.COM," "Preferred Vapor," "Preferred Vapor eCigs," and "Electric Cigs Reviews" ("Defendant"):

## NATURE OF THE ACTION

1.     This is an action at law and in equity for trademark infringement, unfair competition and false designation of origin, and trademark dilution arising under sections 32 and 43 of the Federal Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1114, 1125; trademark infringement arising under N.J. Stat. § 56:3-13.16; trademark dilution arising under N.J. Stat. § 56:3-13.20; unfair or deceptive trade practices arising under N.C. Gen. Stat. §§ 75-1 *et seq.*; and trademark infringement and unfair competition

1

arising under the common law of the State of North Carolina and the State of New Jersey.

2. As more fully described below, without RII's authorization, Defendant has used and continues to use trademarks that are colorable imitations of, and are confusingly similar to, RII's federally-registered trademarks in the United States in connection with the sale of Defendant's liquid nicotine products via the Internet. In particular, Defendant has used, without RII's authorization, colorable imitations of the famous CAMEL and CAMEL & Design trademarks and variations thereof (collectively, the "CAMEL Marks"), the KAMEL RED trademark and variations thereof (collectively, the "KAMEL RED Marks"), the famous KOOL and KOOL & Design trademarks (collectively, the "KOOL Marks"), and the famous SALEM and SALEM & Design trademarks and variations thereof (collectively, the "SALEM Marks").

3. On information and belief, Defendant has been and continues to be engaged in the business of operating the Internet website at <www.preferredvapor.com> ("Defendant's Website"), through which Defendant actively promotes and sells, among other items, "eJuice" or "E-Liquid" flavored liquid nicotine products for use with electronic cigarettes. On further information and belief, without RII's authorization, Defendant has used RII's famous and federally-registered CAMEL Marks, KOOL Marks, and SALEM Marks, or colorable imitations thereof, and RII's registered KAMEL RED Marks, or colorable imitations thereof, in the advertising and sale of eJuice / E-Liquid (hereinafter referred to as "E-Liquid") nicotine products.

4. On information and belief, without RII's authorization, Defendant has sold and shipped, and continues to sell and ship, varieties of E-Liquid nicotine products

2

bearing trademarks that are confusingly similar to and colorable imitations of RII's federally-registered CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks, to customers in the United States.

5.      RII has not authorized or permitted Defendant to use its CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with Defendant's E-Liquid products.  Unless enjoined by this Court, Defendant's conduct will continue to result in a likelihood of consumer confusion and irreparable injury to RII.

## PARTIES, JURISDICTION, AND VENUE

6.      RII is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business at 401 North Main Street, Winston-Salem, North Carolina.  RII is a trademark holding company and a subsidiary of R.J. Reynolds Tobacco Company.  RII is therefore the record owner, in its own right or by assignment from its predecessors-in-interest, of the CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks that are at issue in this dispute, including the federal trademark registrations that are identified below.  For convenience, and unless the context indicates otherwise, the term "Reynolds" will be used to refer collectively to RII, RII's predecessors-in-interest and/or RII's corporate affiliates who use the trademarks owned by RII under authority from RII.

7.      On information and belief, Defendant John Thompson is a resident of New Jersey with an address at 301 Colorado Trail, Browns Mills, New Jersey 08015.  On further information and belief, Mr. Thompson owns and operates Defendant's

3

PREFERREDVAPOR.COM website, and uses the purported business names "Preferred Vapor," "Preferred Vapor eCigs," and "Electric Cig Reviews" in connection with Defendant's Website and his sale of E-Liquid nicotine products and other products associated with electronic cigarettes.

8.      This Court has subject matter jurisdiction over the federal claims alleged herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338.  As to the state law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1338(b), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over Defendant because Defendant has purposefully availed himself of the privilege of doing business in this district.  Defendant owns and operates Defendant's Website, which is an interactive website that is accessible by Internet users in this district and offer goods to residents of North Carolina.  The infringing products that Defendant advertises and offers under the CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks, or colorable imitations thereof, and makes available through Defendant's Website to purchasers in the United States, are capable of being ordered, and have been ordered, by purchasers in North Carolina, and are capable of being shipped, and have been shipped, to purchasers in North Carolina.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that, on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

11.     This Court has jurisdiction to enter injunctive relief, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

12.　　The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

13.　　At all times material hereto, Reynolds has been, and currently is still, engaged in the business of manufacturing, distributing, marketing, advertising, offering for sale, and selling various types of tobacco products throughout the United States under multiple trademarks owned by RII and under authority from RII.　As more fully described below, RII's famous CAMEL Marks, KOOL Marks, and SALEM Marks, and RII's KAMEL RED Marks, are registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") and are used in connection with the sale of cigarettes, among other things.　RII's products offered under the CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks are sold across the United States.　RII's CAMEL Marks, KOOL Marks, and SALEM Marks are famous throughout the United States, including in North Carolina and New Jersey.

### CAMEL Marks

14.　　Beginning at least as early as 1913, Reynolds adopted and began using the distinctive designation CAMEL in interstate commerce for the purpose of identifying and distinguishing Reynolds's tobacco products from the products of other manufacturers and distributors of tobacco.　Reynolds has advertised, marketed, distributed, offered for sale, and sold its products under the CAMEL Marks continuously for nearly 100 years.

15.　　On September 30, 1919, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 126,760 for the trademark CAMEL, in stylized form as

5

shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'760 Registration").

# CAMEL

The '760 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '760 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '760 Registration, together with USPTO assignment records reflecting RII's ownership of the '760 Registration, is attached hereto as Exhibit 1.

16. On April 29, 1986, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 1,391,824 for the trademark CAMEL & Design, shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'824 Registration").



The '824 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to

6

the provisions of 15 U.S.C. § 1065. The '824 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '824 Registration, together with USPTO assignment records reflecting RII's ownership of the '824 Registration, is attached hereto as <u>Exhibit 2</u>.

 17. On February 20, 2007, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 3,211,464 for the trademark CAMEL, in standard characters, on the USPTO's Principal Register for use in connection with "snuff, namely snus" (the "'464 Registration"). The '464 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '464 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "snuff, namely snus." A true and accurate copy of the Certificate of Registration for the '464 Registration, together with USPTO assignment records reflecting RII's ownership of the '464 Registration, is attached hereto as <u>Exhibit 3</u>. (The '760, '824, and '464 Registrations are referred to collectively hereinafter as the "CAMEL Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "CAMEL Marks.")

18. RII owns, *inter alia*, the CAMEL Registrations, the CAMEL Marks, and all the goodwill associated therewith in the United States. The CAMEL Registrations remain valid, subsisting, and uncancelled, and have become incontestable as described above.

19. The CAMEL Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

20. The CAMEL Marks inherently serve to distinguish Reynolds's tobacco products from those of others. The CAMEL Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the CAMEL Marks throughout the United States, consumers of tobacco products recognize the CAMEL Marks as symbols of the highest quality of tobacco products, and associate and identify the CAMEL Marks with Reynolds or with a single source. Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

<u>KAMEL RED Marks</u>

21. On January 21, 1997, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 2,032,164 for the trademark KAMEL RED, in standard characters, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'164 Registration"). The '164 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '164

8

Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '164 Registration, together with USPTO assignment records reflecting RII's ownership of the '164 Registration, is attached hereto as <u>Exhibit 4</u>.

22. On April 29, 1997, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 2,057,040 for the trademark KAMEL RED GENUINE TASTE ORIGINALS & Design, shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'040 Registration").



The '040 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '040 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark

9

in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '040 Registration, together with USPTO assignment records reflecting RII's ownership of the '040 Registration, is attached hereto as <u>Exhibit 5</u>.

23.    On April 29, 1997, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 2,057,041 for the trademark KAMEL RED LIGHT FILTERS RED CIGARETTES GENUINE TASTE TURKISH 8 DOMESTIC BLEND LIGHTS & Design, shown below, on the USPTO's Principal Register for use in connection with "cigarettes" (the "'041 Registration").



The '041 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '041 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '041 Registration, together with USPTO assignment records

10

reflecting RII's ownership of the '041 Registration, is attached hereto as <u>Exhibit 6</u>. (The '164, '040, and '041 Registrations are referred to collectively hereinafter as the "KAMEL RED Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "KAMEL RED Marks.")

24. RII owns, *inter alia*, the KAMEL RED Registrations, the KAMEL RED Marks, and all the goodwill associated therewith in the United States. The KAMEL RED Registrations remain valid and subsisting, and have become incontestable as described above.

25. The KAMEL RED Marks inherently serve to distinguish Reynolds's tobacco products from those of others. The KAMEL RED Marks are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's products and, as a result of years of continuous use and promotion of the KAMEL RED Marks throughout the United States by Reynolds, consumers of tobacco products recognize the KAMEL RED Marks as symbols of the highest quality of tobacco products, and associate and identify the KAMEL RED Marks with Reynolds or with a single source. Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

<u>KOOL Marks</u>

26. Beginning at least as early as 1931, Reynolds's predecessor-in-interest adopted and began using the distinctive designation KOOL in interstate commerce for the purpose of identifying and distinguishing its tobacco products from the products of other manufacturers and distributors of tobacco. Reynolds or its predecessors-in-interest has

11

advertised, marketed, distributed, offered for sale, and sold its products under the KOOL mark continuously for more than eighty (80) years.

27.     On April 12, 1949, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 508,538 for the trademark KOOL (stylized, as shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'538 Registration").  Reynolds has used this KOOL & Design trademark in interstate commerce in connection with cigarettes since at least November 20, 1931.



The '538 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '538 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '538 Registration, together with USPTO assignment records reflecting RII's ownership of the '538 Registration, is attached hereto as Exhibit 7.

28.     On April 2, 1963, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 747,482 for the trademark KOOL on the USPTO's Principal Register for use in connection with "cigarettes" (the "'482 Registration").  Reynolds has used this KOOL mark in interstate commerce in connection with cigarettes since at least

12

November 20, 1931. The '482 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '482 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '482 Registration, together with USPTO assignment records reflecting RII's ownership of the '482 Registration, is attached hereto as <u>Exhibit 8</u>.

29.    On April 2, 1963, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 747,490 for the trademark KOOL & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'490 Registration"). Reynolds has used this KOOL & Design mark in interstate commerce in connection with cigarettes since at least December 1932.



The '490 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '490 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of

said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '490 Registration, together with USPTO assignment records reflecting RII's ownership of the '490 Registration, is attached hereto as <u>Exhibit 9</u>.

30.     On October 27, 1998, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 2,218,589 for the trademark KOOL in stylized form (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'589 Registration").



The '589 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065.  The '589 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '589 Registration, together with USPTO assignment records reflecting RII's ownership of the '589 Registration, is attached hereto as <u>Exhibit 10</u>.  (The '538, '482, '490, and '589 Registrations are referred to collectively hereinafter as the "KOOL Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "KOOL Marks.")

14

31.     RII owns, *inter alia*, the KOOL Registrations, the KOOL Marks, and all the goodwill associated therewith in the United States.  The KOOL Registrations remain valid, subsisting, and uncancelled, and have become incontestable as described above.

32.     The KOOL Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

33.     The KOOL Marks inherently serve to distinguish Reynolds's tobacco products from those of others.  The KOOL Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the KOOL Marks throughout the United States, consumers of tobacco products recognize the KOOL Marks as symbols of the highest quality of tobacco products, and associate and identify the KOOL Marks with Reynolds or with a single source.  Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

SALEM Marks

34.     Beginning at least as early as 1956, Reynolds adopted and began using the distinctive designation SALEM in interstate commerce for the purpose of identifying and distinguishing its tobacco products from the products of other manufacturers and distributors of tobacco.  Reynolds has advertised, marketed, distributed, offered for sale, and sold its products under the SALEM trademark continuously for more than fifty-six (56) years.

15

35.     On November 20, 1956, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 637,365 for the trademark SALEM on the USPTO's Principal Register for use in connection with "cigarettes" (the "'365 Registration"). Reynolds has used this SALEM trademark in interstate commerce in connection with such tobacco products since at least March 19, 1956.  The '365 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '365 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes."  A true and accurate copy of the Certificate of Registration for the '365 Registration, together with USPTO assignment records reflecting RII's ownership of the '365 Registration, is attached hereto as Exhibit 11.

36.     On January 29, 2008, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 3,375,848 for the trademark SALEM & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'848 Registration").



The '848 Registration, which RII duly acquired by assignment from its predecessors-in-interest, has become incontestable by virtue of long and continuous use and pursuant to the provisions of 15 U.S.C. § 1065. The '848 Registration therefore constitutes conclusive evidence of the validity of the mark shown therein and of the registration of said mark, of RII's ownership of said mark, and of RII's exclusive right to use said mark in commerce in connection with "cigarettes." A true and accurate copy of the Certificate of Registration for the '848 Registration, together with USPTO assignment records reflecting RII's ownership of the '848 Registration, is attached hereto as Exhibit 12.

37. On August 12, 2008, RII's predecessor-in-interest was granted U.S. Trademark Registration No. 3,486,051 for the trademark SALEM & Design (shown below) on the USPTO's Principal Register for use in connection with "cigarettes" (the "'051 Registration").



A true and accurate copy of the Certificate of Registration for the '051 Registration, together with USPTO assignment records reflecting RII's ownership of the '051 Registration, is attached hereto as Exhibit 13. (The '365, '848, and '051 Registrations are referred to collectively hereinafter as the "SALEM Registrations," and the trademarks shown therein, and the common law equivalents of such trademarks, are hereinafter referred to as the "SALEM Marks.")

17

38.     RII owns, *inter alia*, the SALEM Registrations, the SALEM Marks, and all the goodwill associated therewith in the United States.  The SALEM Registrations remain valid, subsisting, and uncancelled, and the '365 and '848 Registrations have become incontestable as described above.

39.     The SALEM Marks are famous trademarks that are widely recognized by the general consuming public across the United States as a designation of the source of Reynolds's goods.

40.     The SALEM Marks inherently serve to distinguish Reynolds's tobacco products from those of others.  The SALEM Marks are recognized by the general consuming public as a designation of the source of Reynolds's products and, as a result of Reynolds's long and continuous use and promotion of the SALEM Marks throughout the United States, consumers of tobacco products recognize the SALEM Marks as symbols of the highest quality of tobacco products, and associate and identify the SALEM Marks with Reynolds or with a single source.  Reynolds derives substantial goodwill and value from this identification by the consuming public and the trade.

**Defendant's Unlawful Acts**

41.     On information and belief, Defendant has advertised and offered for sale products under the:

  a. CAMEL Marks, or marks that are confusingly similar to and colorably imitate the CAMEL Marks;

  b. KAMEL RED Marks, or marks that are confusingly similar to and colorably imitate the KAMEL RED Marks;

18

c. KOOL Marks, or marks that are confusingly similar to and colorably imitate the KOOL Marks; and

d. SALEM Marks, or marks that are confusingly similar to and colorably imitate the SALEM Marks.

42. On information and belief, Defendant operates Defendant's Website which advertises, offers for sale, and sells, among other things, liquid nicotine products called "eJuice" or "E-Liquid" that are used in connection with electronic cigarettes. Defendant's Website offers E-Liquid nicotine products in multiple flavors. Printouts of web pages from Defendant's Website are attached hereto as Exhibit 14.

43. On information and belief, Defendant has offered for sale and sold through Defendant's Website various E-Liquid nicotine products advertised under and/or bearing the CAMEL Marks, or marks that are confusingly similar to the CAMEL Marks; the KAMEL RED Marks, or marks that are confusingly similar to the KAMEL RED Marks; the KOOL Marks, or marks that are confusingly similar to the KOOL Marks; and the SALEM Marks, or marks that are confusingly similar to the SALEM Marks. *See* Exhibit 14. Hereinafter, these E-Liquid nicotine products advertised, offered for sale, and sold by Defendant will be referred to as the "Infringing Products" or, if more specificity is required, the "Infringing CAMEL/KAMEL RED Products," "Infringing KOOL Products," or "Infringing SALEM Products," as the case may be.

44. Defendant's Infringing Products are advertised and offered for sale on Defendant's Website in flavors identified using, *inter alia*, the following designations:

a. "Kamel Turkish Tobacco eJuice";

b. "Kamel 10ml";

c. "Kamel 10ml & Reds Tobacco 5ml";

d. "Kools Menthol 10 ml"; and

e. "Salems Menthol 10ml."

*See* <u>Exhibit 14</u>. Examples of Defendant's unauthorized use of RII's CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks, or colorable imitations of these above-listed marks, on Defendant's Website are shown below in Figures 1 − 5, respectively, and in <u>Exhibit 14</u>.

Fig. 1 ("Kamel Turkish Tobacco eJuice"):



Fig. 2 ("Kamel"):



Fig. 3: ("Kamel" and "Reds Tobacco"):



Fig. 4 ("Kools Menthol"):



Fig. 5 ("Salems Menthol"):



Joye eGo CE4 900mAh Express Starter Kit with eJuice

Part Number 2052

Email a friend    Review this item

Price

Availability: Not for Sale

Retail Price: $44.99
Your Savings: $15.00
Your Price: **$29.99**

Share | 

Like    Be the first of your
friends to like this.

Choose Options

Please Select eGo Color    Please Select eGo Color ▾

Please Select eJuice    Salems Menthol 10ml & NuPort 5ml    ▾

24

45.     That Defendant is using and free-riding on the goodwill and reputation of

the CAMEL Marks and the KAMEL RED Marks is also evidenced by the fact that

Defendant uses in connection with his Infringing CAMEL/KAMEL REDS Products the

unique spelling "K-A-M-E-L" that RII adopted and has used for its KAMEL RED

tobacco products since as early as 1996.  Further, Defendant uses the distinctive

designation "Kamel" in conjunction with the term "Reds," as shown above in Figure 3.

46.     On information and belief, Defendant has sold and continues to sell the

Infringing Products through Defendant's Website to purchasers throughout the United

States, including North Carolina.

47.     A bottle of the Infringing CAMEL/KAMEL RED Products, as received by

a purchaser in North Carolina who ordered the product identified on Defendant's Website

as "Kamel Turkish Tobacco eJuice" (*see* Fig. 1), displays the designation "KAMEL."

Exhibit 15 includes true and accurate printouts of photographs of an Infringing

CAMEL/KAMEL RED Product.

48.     A bottle of the Infringing CAMEL/KAMEL RED Products, as received by

a purchaser in North Carolina who ordered the product identified on Defendant's Website

as "Joye eGo CE4 900mAh Express Starter Kit with eJuice," and selected the flavors

called "Kamel 10ml & Reds Tobacco 5ml" (*see* Fig. 3), displays the designation

"KAMEL."  Exhibit 16 includes a true and accurate printout of a photograph of the

Infringing CAMEL/KAMEL RED Product ordered in conjunction with the above-

referenced Starter Kit.

25

49.     A bottle of the Infringing KOOL Products, as received by a purchaser in North Carolina who ordered the product identified on Defendant's Website as "Joye eGo CE4 900mAh Express Starter Kit with eJuice," and selected the flavors called "Kools Menthol 10ml & NuPort 5ml" (*see* Fig. 4), displays the designation "KOOL." Exhibit 17 includes a true and accurate printout of a photograph of an Infringing KOOL Product.

50.     A bottle of the Infringing SALEM Products, as received by a purchaser in North Carolina who ordered the product identified on Defendant's Website as "Joye eGo CE4 900mAh Express Starter Kit with eJuice," and selected the flavors called "Salems Menthol 10ml & NuPort 5ml" (*see* Fig. 5), displays the designation "SALEM." Exhibit 18 includes a true and accurate printout of a photograph of an Infringing SALEM Product.

51.     Reynolds did not and does not manufacture, distribute, market, offer for sale, or sell any liquid nicotine products under the CAMEL Marks, KAMEL RED Marks, KOOL Marks, or SALEM Marks.

52.     RII has not authorized, and does not authorize, Defendant's use of the CAMEL Marks, KAMEL RED Marks, KOOL Marks, or SALEM Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the manufacture or sale of Defendant's E-Liquid products or any other products of Defendant.

## FIRST CLAIM FOR RELIEF
**(Infringement of Federally Registered Trademarks under 15 U.S.C. § 1114)**

53.     The allegations of the foregoing Paragraphs are repleaded and incorporated

by reference as if fully set forth herein.

54. Defendant's unauthorized use of the registered CAMEL Marks and KAMEL RED Marks, and Defendant's sale of Infringing CAMEL/KAMEL RED Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendant's Infringing CAMEL/KAMEL RED Products are products authorized by RII for sale under the CAMEL Marks or KAMEL RED Marks, partaking of the same qualities and characteristics as products bearing the CAMEL Marks or KAMEL RED Marks, when such is not the case.

55. By his unauthorized sale of the Infringing CAMEL/KAMEL RED Products, Defendant has infringed and continues to infringe the registered CAMEL Marks and KAMEL RED Marks, as shown in the CAMEL Registrations and KAMEL RED Registrations, respectively, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

56. Defendant's unauthorized use of the registered KOOL Marks and Defendant's sale of Infringing KOOL Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendant's Infringing KOOL Products are products authorized by RII for sale under the KOOL Marks, partaking of the same qualities and characteristics as products bearing the KOOL Marks, when such is not the case.

57. By his unauthorized sale of the Infringing KOOL Products, Defendant has infringed and continues to infringe the famous, registered, and incontestable KOOL Marks, as shown in the KOOL Registrations, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

58. Defendant's unauthorized use of the registered SALEM Marks and Defendant's sale of Infringing SALEM Products are likely to cause confusion, mistake, or deception among consumers as to the source, origin, or sponsorship of such products. The consuming public is likely to believe that Defendant's Infringing SALEM Products are products authorized by RII for sale under the SALEM Marks, partaking of the same qualities and characteristics as products bearing the SALEM Marks, when such is not the case.

59. By his unauthorized sale of the Infringing SALEM Products, Defendant has infringed and continues to infringe the famous, registered, and incontestable SALEM mark shown in the '365 Registration, in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

60. Defendant's unauthorized sale of the Infringing CAMEL/KAMEL RED Products, Infringing KOOL Products, and Infringing SALEM Products, and Defendant's unauthorized use of the CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks, or colorable imitations of these above-listed marks owned by RII, in connection with the sale of such products, as alleged above, was intentionally done with a view and purpose of trading on and benefiting from the substantial reputation and

goodwill in the United States associated with the CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks.

61.     Defendant's acts of trademark infringement, as alleged herein, have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendant's illegal conduct.  In addition, Defendant has been unjustly enriched by reason of his trademark infringement in that he has achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of his illegal conduct.

62.     Defendant's trademark infringement as alleged herein has caused, is causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill, unless Defendant's unlawful conduct is enjoined by this Court.

63.     RII is entitled to recover all damages sustained by Defendant's actions; all profits realized by Defendant through his infringing use of the CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the offering for sale and sale of liquid nicotine products or related products; and the costs of this action.

64.     Defendant's actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendant.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition, False Representation, and
### False Designation of Origin under 15 U.S.C. § 1125(a))

65.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

66.     Defendant's unauthorized use of the CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the sale of Defendant's Infringing CAMEL/KAMEL RED Products, Infringing KOOL Products, and Infringing SALEM Products, respectively, constitutes unfair competition, false representation, and false designation of origin in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and is causing and, unless enjoined by this Court, will continue to cause confusion, to cause mistake, or to deceive purchasers and consumers as to the source, origin, or sponsorship of Defendant's products.

67.     As a direct and proximate result of Defendant's unfair competition, false representation, and false designation of origin as herein alleged, RII has suffered, and will continue to suffer, irreparable damage and inherently unquantifiable injury and harm to its business, reputation, and customer goodwill.  Defendant's unfair competition, false representation, and false designation of origin has caused and will continue to cause RII to lose sales to which it would otherwise be entitled, unless such unlawful conduct is enjoined by this Court.

68.     RII is entitled to recover all damages sustained by Defendant's actions, all profits realized by Defendant through his unauthorized use of the CAMEL Marks,

KAMEL RED Marks, KOOL Marks, and SALEM Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the offering for sale and sale of liquid nicotine products or related products, and the costs of this action.

69.     Defendant's actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendant.

## THIRD CLAIM FOR RELIEF
### (Dilution of Federally Registered Trademarks under 15 U.S.C. § 1125(c))

70.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

71.     The CAMEL Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of Reynolds's goods. The CAMEL Marks became famous long prior to Defendant's unlawful use of the CAMEL Marks, or colorable imitations thereof, as alleged herein.

72.     Defendant's use of the CAMEL Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of the Infringing CAMEL Products is likely to dilute RII's famous CAMEL Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided under the famous CAMEL Marks and by harming the reputation and goodwill of the famous CAMEL Marks.

73. The KOOL Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of Reynolds's goods. The KOOL Marks became famous long prior to Defendant's unlawful use of the KOOL Marks, or colorable imitations thereof, as alleged herein.

74. Defendant's use of the KOOL Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of the Infringing KOOL Products is likely to dilute RII's famous KOOL Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided under the famous KOOL Marks and by harming the reputation and goodwill of the famous KOOL Marks.

75. The SALEM Marks are famous trademarks under 15 U.S.C. § 1125(c)(2)(A), in that they are widely recognized by the general consuming public of the United States as a designation of the source of Reynolds's goods. The SALEM Marks became famous long prior to Defendant's unlawful use of the SALEM Marks, or colorable imitations thereof, as alleged herein.

76. Defendant's use of the SALEM Marks, or colorable imitations thereof, in connection with the unauthorized sale in the United States of the Infringing SALEM Products is likely to dilute RII's famous SALEM Marks, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), by lessening their capacity to identify and distinguish Reynolds exclusively as the source of products in the United States bearing or provided

32

under the famous SALEM Marks and by harming the reputation and goodwill of the famous SALEM Marks.

77.     Defendant's unauthorized use of the CAMEL Marks, KOOL Marks, and SALEM Marks in connection with the sale in the United States of Defendant's Infringing CAMEL/KAMEL RED Products, Infringing KOOL Products, and Infringing SALEM Products, respectively, is intended and has the effect of trading on Reynolds's reputation and causing dilution of the famous CAMEL Marks, the famous KOOL Marks, and the famous SALEM Marks.

78.     On information and belief, Defendant does not own any federal or state registrations or trademark applications for any mark that includes, in whole or in part, any of the CAMEL Marks, KOOL Marks, or SALEM Marks, and Defendant cannot assert any rights in the CAMEL Marks, KOOL Marks, or SALEM Marks that are prior to RII's first use, actual or constructive, of the CAMEL Marks, KOOL Marks, or SALEM Marks, respectively.

79.     Defendant's trademark dilution as herein alleged has injured and will continue to injure RII in that RII has suffered and will continue to suffer damage to its reputation and customer goodwill as a direct and proximate result of Defendant's illegal conduct, unless such unlawful conduct is enjoined by this Court.  In addition, Defendant has been unjustly enriched by reason of his acts of trademark dilution in that he has achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of his illegal conduct.

33

80.     RII is entitled to recover all damages sustained by Defendant's actions, all profits realized by Defendant through his unlawful use of the CAMEL Marks, KOOL Marks, and SALEM Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with Defendant's offering for sale and sale of liquid nicotine products or related products, and the costs of this action.

81.     Defendant's actions have been willful and deliberate, entitling RII to recover treble damages and/or profits and an award of reasonable attorneys' fees against Defendant.

## FOURTH CLAIM FOR RELIEF
### (Trademark Infringement under New Jersey Statute § 56:3-13.16)

82.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

83.     Defendant's unauthorized use of the registered CAMEL Marks and KAMEL RED Marks, and Defendant's sale of Infringing CAMEL/KAMEL RED Products are likely to cause consumer confusion, mistake, or deception as to the source or origin of such products.  The consuming public is likely to believe that Defendant's Infringing CAMEL/KAMEL RED Products are products authorized by RII for sale under the CAMEL Marks and/or the KAMEL RED Marks, partaking of the same qualities and characteristics as products bearing the CAMEL Marks or the KAMEL RED Marks, when such is not the case.  By his unauthorized sale of the Infringing CAMEL/KAMEL RED Products, Defendant has infringed and continues to infringe the registered CAMEL

Marks and KAMEL RED Marks in violation of New Jersey's statute against trademark infringement, N.J. Stat. § 56:3-13.16.

84. Defendant's unauthorized use of the registered KOOL Marks and Defendant's sale of Infringing KOOL Products are likely to cause consumer confusion, mistake, or deception as to the source or origin of such products. The consuming public is likely to believe that Defendant's Infringing KOOL Products are products authorized by RII for sale under the KOOL Marks, partaking of the same qualities and characteristics as products bearing the KOOL Marks, when such is not the case. By his unauthorized sale of the Infringing KOOL Products, Defendant has infringed and continues to infringe the registered KOOL Marks in violation of New Jersey's statute against trademark infringement, N.J. Stat. § 56:3-13.16.

85. Defendant's unauthorized use of the registered SALEM Marks and Defendant's sale of Infringing SALEM Products are likely to cause consumer confusion, mistake, or deception as to the source or origin of such products. The consuming public is likely to believe that Defendant's Infringing SALEM Products are products authorized by RII for sale under the SALEM Marks, partaking of the same qualities and characteristics as products bearing the SALEM Marks, when such is not the case. By his unauthorized sale of the Infringing SALEM Products, Defendant has infringed and continues to infringe the registered SALEM Marks in violation of New Jersey's statute against trademark infringement, N.J. Stat. § 56:3-13.16.

86. Defendant's unauthorized sale of the Infringing CAMEL/KAMEL RED Products, Infringing KOOL Products, and Infringing SALEM Products, and Defendant's

unauthorized use of the CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the sale of such products, as alleged above, was knowingly and intentionally done with a view and purpose of causing consumer confusion, mistake, or deception as to the source or origin of such products, by trading on and benefiting from the substantial reputation and goodwill in the United States associated with the CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks.

87.     Defendant's acts of trademark infringement, as alleged herein, have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendant's illegal conduct.  In addition, Defendant has been unjustly enriched by reason of his trademark infringement in that he has achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of his illegal conduct.

88.     Defendant's trademark infringement as alleged herein has caused, is causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill, unless Defendant's intentional unlawful conduct is enjoined by this Court.

89.     RII is entitled, pursuant to N.J. Stat. § 56:3-13.16(d), to recover three times the profits realized by Defendant through his willful, knowing, and intentional unauthorized and infringing use of the CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks, or colorable imitations of any of these above-listed marks

owned by RII, in connection with the offering for sale and sale of liquid nicotine products, and an award of reasonable attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Trademark Dilution under New Jersey Statute § 56:3-13.20)

90.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

91.     Defendant's willful, knowing, and intentional unauthorized use of the famous CAMEL Marks, the famous KOOL Marks, and the famous SALEM Marks as described herein is likely to lessen the capacity of the CAMEL Marks, KOOL Marks, and SALEM Marks to identify and distinguish Reynolds's products, and to dilute the distinctive quality of the famous CAMEL Marks, KOOL Marks, and SALEM Marks.  As a result of Defendant's willful acts, RII has suffered and is likely to suffer irreparable injury to the distinctiveness and source-identifying capacity of its CAMEL Marks, KOOL Marks, and SALEM Marks.

92.     Defendant's willful, knowing, and intentional unauthorized use of the famous CAMEL Marks, KOOL Marks, and SALEM Marks in connection with the unauthorized advertising and sale in the United States, including in the State of New Jersey, upon information and belief, of Defendant's Infringing CAMEL Products, Infringing KOOL Marks, and Infringing SALEM Marks is likely to dilute the distinctive quality of RII's famous CAMEL Marks, KOOL Marks, and SALEM Marks.

93.     Defendant's willful, knowing, and intentional unauthorized use of RII's famous trademarks, or colorable imitations thereof, in order to trade on and profit from

the reputation built by RII in its famous CAMEL Marks, KOOL Marks, and SALEM Marks, as alleged herein, has caused, is causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill, unless Defendant's intentional unlawful conduct is enjoined by this Court. Defendant's acts constitute a violation of New Jersey's anti-dilution statute, N.J. Stat. § 56:3-13.20, and RII is thus entitled to injunctive relief.

94.     RII is entitled, pursuant to N.J. Stat. §§ 56:3-13.20(g) and 56:3-13.16(d), to recover three times the profits realized by Defendant through his willful, knowing, and intentional unauthorized use and dilution of the famous CAMEL Marks, famous KOOL Marks, and famous SALEM Marks, or colorable imitations of any of these above-listed marks owned by RII, in connection with the offering for sale and sale of liquid nicotine products, as well as an award of reasonable attorneys' fees and costs.

## SIXTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1 *et seq.*)

95.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

96.     Defendant's conduct as alleged above is in commerce and affects commerce in the State of North Carolina.

97.     Defendant's conduct as alleged above constitutes unfair methods of competition and unfair and deceptive acts and practices in violation of N.C. Gen. Stat. § 75-1 *et seq.*

38

98.     Defendant's unfair methods of competition and his unfair and deceptive trade practices as alleged herein have injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendant's illegal conduct.  In addition, Defendant has been unjustly enriched by reason of his unfair methods of competition and unfair and deceptive trade practices in that Defendant has achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of his illegal conduct.

99.     Defendant has willfully engaged in the acts and practices alleged above, justifying an award of attorneys' fees to RII pursuant to N.C. Gen. Stat. § 75-16.1.

## SEVENTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition)

100.     The allegations of the foregoing Paragraphs are repleaded and incorporated by reference as if fully set forth herein.

101.     Defendant's conduct as alleged above constitutes trademark infringement and unfair competition in violation of the common law of the State of North Carolina and the State of New Jersey.

102.     Defendant's trademark infringement and unfair competition as alleged above has injured RII in that RII has suffered damage to its reputation and customer goodwill as a direct and proximate result of Defendant's illegal conduct.  In addition, Defendant has been unjustly enriched by reason of his trademark infringement and unfair competition in that Defendant has achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of his illegal conduct.

103.     Unless enjoined by this Court, Defendant's trademark infringement and unfair competition as herein alleged will continue to cause irreparable and inherently unquantifiable injury and harm to RII's business, reputation, and goodwill.

104.     Defendant's wrongful conduct as above alleged was accompanied by circumstances of willfulness and deliberate indifference to the rights of RII, warranting the assessment of punitive damages.

**WHEREFORE**, RII prays the Court as follows:

1.     That Defendant, his affiliates, agents, servants, employees, officers, attorneys, and those persons in active concert or participation with them, be preliminarily and permanently enjoined from any and all further unauthorized promotion, marketing, advertising, sale, offering for sale, or distribution of:

a.     products bearing the CAMEL Marks, or colorable imitations thereof, or the KAMEL RED Marks, or colorable imitations thereof, including without limitation Defendant's Infringing CAMEL/KAMEL RED Products;

b.     products bearing the KOOL Marks, or colorable imitations thereof, including without limitation Defendant's Infringing KOOL Products; and

c.     products bearing the SALEM Marks, or colorable imitations thereof, including without limitation Defendant's Infringing SALEM Products.

2.     That Defendant, his affiliates, agents, servants, employees, officers, attorneys, and those persons in active concert or participation with them, be preliminarily

and permanently enjoined from any unauthorized sale, offering for sale, or distribution of products bearing any trademark owned by RII, or any colorable imitations thereof;

3.      That RII have and recover of Defendant such actual damages as RII may prove at trial;

4.      That Defendant account to RII for all of Defendant's profits derived as a direct and proximate result of Defendant's unlawful conduct;

5.      That such damages and/or profits to which RII is entitled by trebled pursuant to 15 U.S.C. § 1117, N.C. Gen. Stat. § 75-16, and N.J. Stat. § 56:3-13.16(d);

6.      That, in the alternative to treble damages and/or profits, RII have and recover punitive damages of Defendant;

7.      That the costs of this action, including a reasonable attorneys' fee, be taxed against Defendant; and

8.      That the Court grant RII such other and further relief as the Court may deem just and proper.

This the 8th day of April, 2013.

*s/ William M. Bryner*

KILPATRICK TOWNSEND & STOCKTON LLP

William M. Bryner, N.C. State Bar No. 23022
1001 West Fourth Street
Winston-Salem, North Carolina 27101
Telephone: 336-607-7300
Facsimile: 336-607-7500
wbryner@kilpatricktownsend.com

Kristin G. Garris, N.C. State Bar No. 38767
1114 Avenue of the Americas, 21st Floor
New York, New York 10036
Telephone: 212-775-8700
Facsimile: 212-775-8800
kgarris@kilpatricktownsend.com

*Attorneys for Plaintiff Reynolds Innovations Inc.*