IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

REYNOLDS INNOVATIONS INC.,  )
                            )
    Plaintiff,               )
                            )
vs.                         )
                            )   Civil Action No. 1:13-cv-286
JOHN THOMPSON, individually and )
d/b/a "PREFERREDVAPOR.COM," )
"PREFERRED VAPOR,"          )
"PREFERRED VAPOR ECIGS," and )
"ELECTRIC CIG REVIEWS,"     )
                            )
    Defendant.              )
                            )

## FINAL JUDGMENT AND PERMANENT INJUNCTION ON CONSENT

Plaintiff Reynolds Innovations Inc. ("RII") and Defendant John Thompson, individually and d/b/a "PREFERREDVAPOR.COM," "Preferred Vapor," "Preferred Vapor eCigs," and "Electric Cigs Reviews" ("Defendant"), have reached a confidential agreement in settlement of the dispute between them and have consented to the entry of this Final Judgment and Permanent Injunction on Consent ("Consent Judgment"), based on the following stipulated findings of facts and conclusions of law, which the Court hereby adopts for purposes of the entry of this Consent Judgment.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.  RII is a North Carolina corporation with a place of business at 401 North Main Street, Winston-Salem, North Carolina.

2.  RII is a trademark holding company and subsidiary of R.J. Reynolds

Tobacco Company. RII is the owner of distinctive trademarks, including but not limited to trademarks consisting of the word "CAMEL," alone or in conjunction with other words and designs, including depictions of a camel; trademarks consisting of the words "KAMEL RED," alone or in conjunction with design elements or other words; trademarks consisting of the word "KOOL," alone or in conjunction with design elements or other words; and trademarks consisting of the word "SALEM," alone or in conjunction with design elements or other words.

3. RII, through its predecessors-in-interest and affiliates, has used the CAMEL trademarks continuously for 100 years in connection with tobacco products, including but not limited to cigarettes. (For convenience, and unless the context indicates otherwise, the term "Reynolds" will be used to refer collectively to RII's predecessors-in-interest and/or to RII's corporate affiliates who use the trademarks owned by RII under authority from RII.)

4. RII has registered various versions of its CAMEL marks on the Principal Register of the United States Patent and Trademark Office ("USPTO") under, *inter alia*, U.S. Trademark Registration Nos. 126,760; 1,391,824; and 3,211,464. Each of these registrations has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. (For convenience, the marks shown in these registrations and their common-law counterparts are collectively referred to hereinafter as the "CAMEL Marks.")

5. Reynolds has used the KAMEL RED trademarks continuously for seventeen (17) years in connection with tobacco products, including but not limited to cigarettes.

6. RII has registered various versions of its KAMEL RED marks on the Principal Register of the USPTO under U.S. Trademark Registration Nos. 2,032,164; 2,057,040; and 2,057,041. (For convenience, the marks shown in these registrations and their common-law counterparts are collectively referred to hereinafter as the "KAMEL RED Marks.")

7. Reynolds has used the KOOL trademarks continuously for eighty-two (82) years in connection with tobacco products, including cigarettes.

8. RII has registered various versions of its KOOL marks on the Principal Register of the USPTO under U.S. Trademark Registration Nos. 508,538; 747,482; 747,490; and 2,218,589. Each of these registrations has become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065. (For convenience, the marks shown in these registrations and their common-law counterparts are collectively referred to hereinafter as the "KOOL Marks.")

9. Reynolds has used the SALEM trademarks continuously for fifty-seven (57) years in connection with tobacco products, including cigarettes.

10. RII has registered various versions of its SALEM marks on the Principal Register of the USPTO under U.S. Trademark Registration Nos. 637,365; 3,375,848; and

3,486,051. (For convenience, the marks shown in these registrations and their common-law counterparts are collectively referred to hereinafter as the "SALEM Marks.")

11. As a result of many years of continuous use and promotion of the CAMEL Marks, the KAMEL RED Marks, the KOOL Marks, and the SALEM Marks, RII's CAMEL Marks, KAMEL RED Marks, KOOL Marks, and SALEM Marks have acquired a high degree of recognition throughout the United States as symbolic of the highest quality of tobacco products. The public is uniquely aware of the CAMEL Marks, the KAMEL RED Marks, the KOOL Marks, and the SALEM Marks, and identifies those marks with Reynolds. The CAMEL Marks, the KOOL Marks, and the SALEM Marks are famous trademarks that are widely recognized by the general public as a designation of the source of Reynolds's goods.

12. Defendant John Thompson ("Defendant") is a resident of Browns Mills, New Jersey, owns and operates the PREFERREDVAPOR.COM website, and uses the business names "Preferred Vapor," "Preferred Vapor eCigs," and "Electric Cig Reviews" in connection with his PREFERREDVAPOR.COM website and his sale of liquid nicotine products and other products associated with electronic cigarettes.

13. Defendant advertised, sold, and distributed liquid nicotine products under or bearing the CAMEL Marks, or colorable imitations of the CAMEL Marks that are confusingly similar to the CAMEL Marks.

14. Defendant advertised, sold, and distributed liquid nicotine products under or bearing the KAMEL RED Marks, or colorable imitations of the KAMEL RED Marks that are confusingly similar to the KAMEL RED Marks.

15. Defendant advertised, sold, and distributed liquid nicotine products under or bearing the KOOL Marks, or colorable imitations of the KOOL Marks that are confusingly similar to the KOOL Marks.

16. Defendant advertised, sold, and distributed liquid nicotine products under or bearing the SALEM Marks, or colorable imitations of the SALEM Marks that are confusingly similar to the SALEM Marks.

17. On April 8, 2013, RII commenced the above-captioned action (the "Action") by filing a complaint (the "Complaint") against Defendant. The Complaint alleged claims for trademark infringement, unfair competition and false designation of origin, and trademark dilution arising under sections 32 and 43 of the Federal Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1114, 1125; trademark infringement arising under N.J. Stat. § 56:3-13.16; trademark dilution arising under N.J. Stat. § 56:3-13.20; unfair or deceptive trade practices arising under N.C. Gen. Stat. §§ 75-1 *et seq.*; and trademark infringement and unfair competition arising under the common law of the State of North Carolina and the State of New Jersey.

18. The parties have agreed to resolve their dispute by the entry of this Final Judgment and Permanent Injunction on Consent, as well as by payment from Defendant to RII of a confidential amount of money.

19. Pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and pursuant to 28 U.S.C. §§ 1331, 1338, and 1367, this Court has subject matter jurisdiction over RII's claims against Defendant.

20. This Court has personal jurisdiction over Defendant because Defendant has purposefully availed himself of the privilege of doing business in this district. Defendant owns and operates the website located at PREFERREDVAPOR.COM ("Defendant's Website"), which is an interactive website that is accessible by Internet users in this district and offers goods to residents of North Carolina. The infringing products that Defendant offers under the CAMEL Marks, or colorable imitations thereof; KAMEL RED Marks, or colorable imitations thereof; KOOL Marks, or colorable imitations thereof; and SALEM Marks, or colorable imitations thereof, and makes available through Defendant's Website to purchasers in the United States, are capable of being ordered, and have been ordered, by purchasers in North Carolina, and are capable of being shipped, and have been shipped, to purchasers in North Carolina.

21. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), in that, on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PERMANENT INJUNCTION AND ORDER

Based on the parties' stipulation and agreement hereto, it is hereby **ORDERED, ADJUDGED**, and **DECREED** as follows:

1. Defendant and his agents, representatives, employees, attorneys, successors and assigns, and all others in active concert or participation with him, are hereby **PERMANENTLY ENJOINED AND RESTRAINED** from:

   a) using, advertising, promoting, displaying, or making any use whatsoever, in connection with the advertisement, promotion, or sale of tobacco, tobacco-related products, vapor products or vapor-related products, electronic cigarettes or products related to electronic cigarettes, liquid nicotine products, or flavored nicotine products, of (i) the designation "CAMEL," the designation "KAMEL," or any colorable imitation of the CAMEL Marks or the KAMEL RED Marks (including but not limited to the designations "Kamel Turkish Tobacco" and "Kamel & Reds Tobacco"); (ii) visual or graphic depictions of a camel or of camels; (iii) the designation "KOOL," or any colorable imitation of the KOOL Marks (including but not limited to the designation "Kools"); (iv) the designation "SALEM," or any colorable imitation of the SALEM Marks (including but not limited to the designations "Salems"); and (v) the following Reynolds trademarks or any colorable imitations thereof: BARCLAY, BELAIR, CAPRI, CARLTON, DORAL, ECLIPSE, GPC, LUCKY STRIKE, MISTY, MONARCH, MORE, NOW,

PALL MALL, TAREYTON, VANTAGE, VICEROY, VUSE, and WINSTON;

b) engaging in any other activity constituting an infringement of RII's trademarks; and

c) using any false designation of origin or false representations which are likely to lead the trade, the public, or individuals to believe erroneously that Defendant is in any way sponsored, approved, authorized, or controlled by Reynolds.

2. Defendant shall pay to RII the confidential amount of money agreed upon by the parties.

3. RII and Defendant acknowledge that they have knowingly and voluntarily entered into this Consent Judgment after reviewing the same with their counsel or having had ample opportunity to consult with counsel of their choice. RII and Defendant understand the undertakings, obligations and terms of this Consent Judgment.

4. Except as to Defendant's obligations set forth in this Consent Judgment, RII's claims against Defendant in this Action are hereby dismissed with prejudice. No appeals shall be taken from this Consent Judgment, and Defendant hereby waives all right to appeal from this Consent Judgment.

5. This Court shall retain jurisdiction over this matter to enforce a violation of this Judgment's terms. If any such violation occurs, the Court may award, (a) without regard to proof of actual damages, an amount the Court deems adequate to compensate

RII for such breach; as well as (b) injunctive relief enjoining any further breach of this Order, or such modifications to the present Order as the Court deems appropriate; (c) attorneys' fees, costs and disbursements, as determined by the Court; and (d) such other relief as the Court deems just and proper.

It is SO ORDERED, this the 10th day of June, 2013.

                                                      _____
                                                      Senior United States District Judge

[SIGNATURES OF THE PARTIES APPEAR ON THE FOLLOWING PAGE]

CONSENTED AND AGREED TO BY:

PLAINTIFF:

DEFENDANT:

**REYNOLDS INNOVATIONS INC.**

**JOHN THOMPSON**

Signature: *Michael D Madigan*

Signature: *[signed]*

Printed Name: *Michael Madigan*

Date: *5-19-2013*

Title: *Secretary*

Date: *5/28/2013*